## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| TIRED OF MINING, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. |
| SCOTT GANN; JASON B. ADKINS; and IRON CITY, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff TIRED of MINING, LLC ("Plaintiff" or "Tired of Mining"), by and through its undersigned counsel, states as follows for its Complaint:

## NATURE OF THE ACTION

Plaintiff brings this lawsuit against a borrower and his guarantors to recover amounts contractually owed and due under a Promissory Note and Consulting Agreement (the "Agreements").

## THE PARTIES

1.     Plaintiff is a duly authorized Nevada limited liability company.  Addison Thom ("Thom" or "Plaintiff"), an Illinois resident, is its sole member.

2.     Upon information and belief, Defendant Scott Gann ("Gann") is a resident of Texas.

3.     Defendant Iron City, LLC ("Iron City") is a Delaware limited liability company with its principal place of business at 885 Sternberger Road, Jackson, Ohio 45640.

4.     Defendant Jason B. Adkins ("Adkins") is an individual resident of Ohio and the managing member of Iron City.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District.  Venue is also proper in this District under 28 U.S.C. § 1391(b)(1) because the parties submitted to the personal jurisdiction in the State of Georgia, the courts thereof and the United States District Courts sitting therein, for the enforcement of the contracts sued upon.

7.     Jurisdiction and venue are therefore proper in this Court.

8.     All conditions are precedent to this action have been satisfied, excused or waived.

## FACTUAL ALLEGATIONS

9.      On November 20, 2017, Plaintiff and Defendant Gann entered into a written Promissory Note in the principal amount of up to $370,000.00 due and payable on or before December 31, 2017.  *See* Exhibit A (the "Promissory Note").

10.     On the same date, Plaintiff and Defendant Gann entered into a Consulting Agreement pursuant to which Defendant Gann agreed to pay Plaintiff $355,000.00 on or before December 31, 2017.  *See* Exhibit B (the "Consulting Agreement").

11.     On the same date, Defendants Iron City and Adkins entered into an Unconditional Guaranty of Payment whereby they agreed to unconditionally guarantee full and prompt payment of amounts owed under the Promissory Note and Consulting Agreement.  *See* Exhibit C (the "Guaranty").

12.     Taken together, these three documents are referred to herein as the "Agreements."

13.     Pursuant to the Promissory Note, Plaintiff wired Defendant Gann the following amounts on the following dates:

- $200,000.00 on November 21, 2017;

- $33,632.09 in April 2018;

- $20,000.00 in October 2018;

- $4,000.00 in November 2018.

**Gann Defaults on the Promissory Note and Consulting Agreement**

14.     Between November 2018 and July 2019, Plaintiff received multiple assurances that all amounts owing under the Promissory Note and Consulting Agreement would be paid in full.

15.     In August 2019, Plaintiff sent Gann, Adkins, and Iron City a notice of default and demand letter seeking the amounts owed under the Agreements.  As of the filing of this complaint, no response has been received.

## COUNT I – BREACH OF CONTRACT (PROMISSORY NOTE)
### (Defendant Scott Gann)

16.     Plaintiff realleges Paragraphs 1-15 above and incorporates them herein by reference as though fully restated herein.

17.     On or about November 2017, Gann executed the Promissory Note in favor of Plaintiff in the original principal sum of $370,000.00 "or so much as is disbursed hereunder" which sums were to be deposited by Plaintiff into Schulten Ward & Turner, LLP's ("Schulten") escrow account.

18.     The executed Promissory Note is attached hereto as "Exhibit A."

19.     Pursuant to the terms of the Promissory Note, Plaintiff made the following deposits into Schulten's escrow account: (i) $200,000.00 on November

21, 2017; (ii) $4,000.00 on April 14, 2018; (iii) $29,632.09 on April 26, 2018; (iii) $20,000.00 on October 19, 2018; and (iv) $4,000.00 on November 20, 2018.  All of these funds with the exception of $7,074.97 that Schulten returned to Plaintiff by wire on or about May 15, 2019 were disbursed by Schulten to pay vendors who were providing services to prepare the conservation easement project for closing.

20.     The Promissory Note was "due and payable on or before December 31, 2017."  To date, Gann has made no payments on the Note.

21.     Plaintiff remains the lawful holder and entitled to enforce the terms of the Promissory Note and has fully performed all obligations required of it under the Note.

22.     The Promissory Note is in default as a result of Gann's failure to pay the sums due and owing, and as a result Plaintiff has declared the entire amount immediately due and owing.

23.     Despite being apprised of the event of default, Gann has failed and refused to pay the amounts due and owing under the Promissory Note.

24.     The amount due and owing under the terms of the Promissory Note is subject to increase with time; however, as of March 31, 2020, the amounts due and owing were the following:

| | |
|---|---|
| Principal: | $250,557.12 |
| Fixed interest: | $15,000,00 |
| Default interest: | $115,365.09 |
| **TOTAL** | **$380,922.21** |

In addition to principal and interest, Plaintiff is also entitled to recover "all expenses, including reasonable attorneys' fees and expenses of legal counsel, actually incurred by the Lender in any way arising from or relating to the enforcement or attempted enforcement of this Note."  Exhibit A, ¶ 7.

### COUNT II – BREACH OF CONTRACT (CONSULTING AGREEMENT)
### (Defendant Scott Gann)

25.     Plaintiff realleges Paragraphs 1-25 above and incorporates them herein by reference as though fully restated herein.

26.     On or about November 2017 Gann entered into a Consulting Agreement with Plaintiff pursuant to which Gann agreed to pay Plaintiff a consulting fee of $355,000.00 on or before December 31, 2017.

27.     The executed Consulting Agreement is attached hereto as "Exhibit B."

28.     The Consulting Agreement is a valid and binding contract between Plaintiff and Gann.

29.     Gann breached the contract by failing to pay any amount towards this contractual obligation.

30.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages totaling $355,000.00 as of December 31, 2017.

31.     Plaintiff is also entitled to pre-judgment interest totaling $55,895.23 to date (March 31, 2020) pursuant to O.C.G.A. § 7-4-15.

## COUNT III – BREACH OF GUARANTY
### (Defendants Iron City and Adkins)

32.     Plaintiff realleges Paragraphs 1-32 above and incorporates them herein by reference as though fully restated herein.

33.     Iron City and Adkins (the "Guarantors") executed the Guaranty whereupon they agreed that if the amounts owed under the Promissory Note and Consulting Agreement were not punctually paid by Gann in accordance with its respective terms, Guarantors would, immediately upon demand by Plaintiff, make such payments.

34.     Guarantors likewise agreed to guarantee the full and prompt payment of all costs and expenses incurred by Plaintiff relating to any default by Gann in connection with the Promissory Note.

35.     As previously stated herein, the Promissory Note and Consulting Agreement are in default as a result of Gann's failure to pay any sums due and owing under either Agreement.

36.     As a result, Plaintiff has declared the entire amount due under the Agreements to be immediately due.

37.     Despite being apprised of the event of default, Gann has failed and refused to punctually pay the amounts due and owing under the Agreements.

38.     The Guarantors have been apprised of Gann's failure to pay.  The Guarantors have failed to abide by the terms of the Guaranty by failing to make prompt payments of the amounts due under the Agreements which, as of March 31, 2020, totaled $791,817.44, plus attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court provide the following relief:

(a)     That Defendants be served with summons and process as provided by Georgia law;

(b)     That Plaintiff be awarded compensatory damages, jointly and severally against all Defendants, in the amount of $791,817.44;

(c)     That Plaintiff be awarded interest as set forth in O.C.G.A. § 7-4-12 and other relevant statutes;

(d)     That all claims stated in this Complaint be tried by jury; and

(e)     For such other and further relief as this Court deems just and proper.

Respectfully submitted this 6th day of April, 2020.

### THE LAW OFFICE OF CRAIG KUGLAR, LLC

_____/s/ Craig H. Kuglar_____
CRAIG H. KUGLAR, ESQ.
Georgia State Bar No. 429968

The Law Office of Craig Kuglar, LLC
931 Monroe Drive NE, Suite A102-353
Atlanta, Georgia  30308
TEL (404) 432-4448
FAX (404) 393-8007

*ATTORNEY FOR PLAINTIFF*

## <u>L.R. 7.1(D) CERTIFICATE OF FONT COMPLIANCE</u>

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Northern District of Georgia, specifically Times New Roman 14 point.

**THE LAW OFFICE OF CRAIG KUGLAR, LLC**

<u>     /s/ Craig H. Kuglar          </u>
CRAIG H. KUGLAR, ESQ.
Georgia State Bar No. 429968

The Law Office of Craig Kuglar, LLC
931 Monroe Drive NE, Suite A102-353
Atlanta, Georgia  30308
TEL (404) 432-4448
FAX (404) 393-8007

*ATTORNEY FOR PLAINTIFF*

# EXHIBIT A

## PROMISSORY NOTE

$370,000.00

November ___, 2017

FOR VALUE RECEIVED, the undersigned, SCOTT B. GANN, an individual resident of Puerto Rico whose address is 2 Plantation # 308, Dorado Beach, Dorado, Puerto Rico 00646 (the "Borrower"), promises to pay to the order of TIRED OF MINING LLC, a Nevada limited liability company whose address is 4840 W. University Avenue, A-1, Las Vegas, Nevada 89103 (the "Lender") or at such other place as the Lender may direct from time to time in writing, the original principal sum of THREE HUNDRED SEVENTY THOUSAND AND NO/100 DOLLARS ($370,000.00), or so much as is disbursed hereunder, together with interest thereon at the rate or rates per annum designated herein computed on the basis of a 360-day year for the actual number of days in each interest period.

1.      Interest Rate:  This Promissory Note (the "Note") shall have a fixed interest payment of FIFTEEN THOUSAND AND NO/100 DOLLARS ($15,000.00) (the "Interest"), which shall be paid on or before the Maturity Date (as hereinafter defined).  Borrower and Lender expressly understand, acknowledge, and agree that the Interest is fully earned as of the date of this Note regardless of whether this Note is paid on or before the Maturity Date.  If any portion of the Note remains unpaid after the Maturity Date, the outstanding amounts due and owing shall accrue interest at the rate of twenty percent (20%) per annum (the "Default Interest") which shall be due and payable by Borrower to Lender until all amounts due and owing under this Note have been paid in full and all obligations of Borrower hereunder have been discharged.

2.      Repayment Terms:  This Note shall be due and payable on or before December 31, 2017 (the "Maturity Date").  If the Note is not paid in full on the Maturity Date, Lender may declare a default and exercise such remedies as provided herein or under applicable law.  Borrower and Lender further understand, acknowledge and agree that in the event Borrower closes on that certain conservation easement project known by him as the _____ (the "Conservation Easement") prior to the Maturity Date, then Borrower shall use the proceeds obtained from such project to pay all unpaid principal and Interest due hereunder before any remaining cash can be used for any other purpose.

3.      Application of Payments:  All payments on this Note shall be applied first to payment of the Interest, then to fees and late charges.   Any remaining funds shall be applied to the reduction of principal. Notwithstanding the foregoing, upon the occurrence of a default hereunder, payments shall be applied as determined by the Lender in its sole discretion.

4.      Prepayment:  The Borrower shall have the privilege to prepay the principal and Interest in full or in part at any time.  Any prepayment shall be applied in the manner provided herein.

5.      Collateral:  The indebtedness evidenced by this Note and the obligations created hereby are secured by that certain Pledge Agreement (the "Pledge Agreement") from IRON CITY, LLC, a Delaware limited liability company ("Iron City") to Lender concerning certain Goodyear tires more particularly described therein.  All property described in this paragraph, in which undersigned has granted to Lender a security interest or security title hereunder is herein collectively referred to as the "Collateral".

6.      Guaranty:  Payment of this Note is guaranteed by that certain Guaranty Agreement (the "Guaranty") of even date herewith, executed by Iron City and JASON E. ADKINS, an individual resident of Ohio ("Adkins") (each a "Guarantor" and together, the "Guarantors") in which Guarantors are jointly and severally liable with Borrower to repay, *inter alia*, the amounts due under this Note.  The terms and conditions of the Guaranty, together with the terms and conditions contained in any other document executed in connection with the Note, shall be considered a part hereof to the same extent as if written herein.

7.      Events of Default; Acceleration:  Each of the following shall constitute a default or event of default hereunder ("Event of Default"): (a) Failure by the Borrower, or any other party to keep, perform or observe

{4826/001/01638967.DOCXv1}

any agreement, covenant, representation, warranty, or condition contained herein which has not been cured within the time provided therein for any applicable cure periods; (b) Failure by the Borrower to pay this Note when due which has not been cured within the time provided therein for any applicable cure periods; (c) Failure by the Borrower and/or Guarantors to comply with any of the terms and provisions of any other documents or agreements between the Borrower and the Lender, including, but not limited to, the Pledge Agreement and Guaranty, that might be entered into between the Borrower and/or the Guarantors and the Lender in connection with this Note which have not been cured within the time provided therein for any applicable cure periods; (d) if Borrower and/or either Guarantor shall file a petition in a bankruptcy court declaring it is bankrupt or requesting a reorganization of its debts and obligations; (e) if Borrower and/or either Guarantor shall make a general assignment of its assets for the benefit of creditors; (f) if Borrower and/or either Guarantor consents to the appointment of a receiver for all or substantially all of its assets; or (g) if Iron City shall at any time cease to continue the operation of its business. The remaining unpaid principal of this Note and Interest shall immediately become due and payable, at the option of the holder hereof, upon the occurrence of an Event of Default. The Lender shall be entitled to recover all expenses, including reasonable attorneys' fees and expenses of legal counsel, actually incurred by the Lender in any way arising from or relating to the enforcement or attempted enforcement of this Note and any related collateral document or other document and the collection or attempted collection, whether by litigation or otherwise, of this Note.

8.      Governing Law; Changes:  This Note may not be changed orally and shall be governed by and construed in accordance with the laws of the State of Georgia without regard to principles of conflict of laws.

9.      Jurisdiction; Venue:  The Borrower (a) submits to personal jurisdiction in the State of Georgia, the courts thereof and the United States District Courts sitting therein, for the enforcement of this Note, (b) waives any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of Georgia for the purpose of litigation to enforce this Note, and (c) agrees that service of process may be made upon the Borrower in any manner prescribed by applicable federal rules of civil procedure or by applicable local rules or laws of civil procedure for the giving of notice to the Borrower.

10.     Payments Not to Violate Law:  Nothing herein contained nor any transaction related thereto shall be construed or so operate as to require the Borrower to pay interest at a rate greater than is now lawful in such case to contract for under applicable law, or to make any payment or to do any act contrary to applicable law, and the Lender shall reimburse the Borrower for any interest paid in excess of the highest rate allowed by applicable law or any other payment which may inadvertently be required by the Lender to be paid contrary to applicable law; and if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Note or any document relating thereto, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein contained, and the remainder of this Note and any related documents shall remain operative and in full force and effect.

11.     Use of Loan Proceeds: Borrower and Lender hereby understand, acknowledge and agree that all loan proceeds borrowed hereunder shall be deposited into the escrow account of Schulten Ward & Turner, LLP (the "Escrow Agent"). Borrower shall thereafter have the right to submit invoices from third party vendors, who are providing services to prepare the Conservation Easement for closing, to Lender and Escrow Agent for payment. Upon Escrow Agent's receipt of Lender's approval for payment of such invoices, Escrow Agent shall promptly fund payment for such invoices so approved. Borrower and Lender understand that unless and until Escrow Agent receives Lender's approval for payment of the submitted invoices Escrow Agent will not release payment for the invoices from the loan proceeds being held in escrow. Borrower and Lender hereby release any and all claims it may have against Escrow Agent for the untimely payment of an invoice due to Borrower failing to timely submit such invoice to Lender and Escrow Agent for approval or Lender failing to timely notify Escrow Agent of its approval of an invoice for payment. Escrow Agent may be contacted at the following address: Schulten Ward Turner & Weiss, LLP, Attn: Eric L. Weiss, 260 Peachtree Street, NW, Suite 2700, Atlanta, Georgia 30303, email: e.weiss@swtwlaw.com, phone: 404-688-6800.

12.    <u>Miscellaneous</u>:   The Borrower and all endorsers, sureties, and guarantors, if any, hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor and of protest, and any and all other notices and demands whatsoever, and agree to remain bound under this Note until the principal and interest are paid in full, notwithstanding any extensions of time for payment which may be granted even though the period or periods of extension be indefinite and notwithstanding any inaction by, or failure to assert any legal rights available to the holder of this Note.   The Borrower acknowledges that the Lender may reproduce (by electronic means or otherwise) any of the documents evidencing and/or securing this Note and thereafter may destroy the original documents.   The Borrower does hereby agree that any document so reproduced shall be the binding obligation of the Borrower enforceable and admissible in evidence against it to the same extent as if the original documents had not been destroyed.   If this Note is a demand instrument, then the statement of a maturity date, the requirement for periodic payments of principal and/or interest, or the recitation of defaults and the right of the Lender to declare this Note due and payable upon any such default shall not constitute an election by the Lender to waive its right to demand payment at any time as specified in any demand or call provision as the Lender in its sole discretion may deem appropriate.   Borrower agrees that it shall be solely responsible for all costs and expenses of preparing the Note and the closing thereof, including, but not limited to, attorney's fees, recording fees, and documentary stamp or intangible taxes relating thereto.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, this Note has been executed under seal the day and year first above written.

**BORROWER:**

_____

SCOTT B. GANN

**ESCROW AGENT:**

**SCHULTEN WARD TURNER & WEISS, LLP,**
a Georgia limited liability partnership

By: _____
Name: _____ ERIC MCILL _____
Its: _____ parner _____

# EXHIBIT B

## CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (this "Agreement") is made and entered into, effective as of the

_____ day of November 2017 (the "Effective Date"), by and between SCOTT B. GANN, an individual resident of Puerto Rico ("Gann") and TIRED OF MINING LLC, a Nevada limited liability company ("Consultant").

### RECITALS:

WHEREAS, Gann desires to retain the services of Consultant as an independent consultant to consult with Gann and provide Gann with client analysis, audit, and planning work relating to Gann's work and Consultant desires to provide such services to Gann as an independent consultant (the "Services"), all in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the premises, the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.     Services.     Subject to the terms and conditions of this Agreement, Gann hereby engages Consultant as an independent consultant, and Consultant hereby accepts said engagement with Gann, for the purpose of providing the Services to Gann during the term of this Agreement. Both Gann and Consultant shall participate in various meetings (either telephonic or in person) at the reasonable request of either Gann or Consultant in order to fulfill and perform the Services under this Agreement. Any and all documents and materials Consultant obtains from Gann, which is not publicly available, shall be held in strictest confidence and shall not be disclosed to any other person or entity or for any purpose inconsistent with this Agreement without the prior written approval of Gann.

2.     Compensation.     Gann agrees to pay Consultant a fee of THREE HUNDRED FIFTY-FIVE THOUSAND AND NO/100 DOLLARS ($355,000.00) for the Services (the "Compensation"), payable by Gann to the Consultant on or before the Term Expiration (as hereinafter defined). Gann and Consultant hereby understand, acknowledge, and agree that Consultant shall have the right to work on other projects during the Term of this Agreement and that this Agreement shall not be considered to be an exclusive Agreement. The Compensation shall be deemed to be full earned and due as of the effective date of this Agreement.

3.     Term.     This term of this Agreement (the "Term") shall commence on the Effective Date and shall continue in full force until December 31, 2017 (the "Term Expiration").

4.     Related Obligations.     The parties herein acknowledge that Gann is simultaneously executing that certain promissory note in the principal amount of THREE HUNDRED SEVENTY THOUSAND AND NO/100 DOLLARS ($370,000.00) in favor of Consultant (the "Note") which is due and payable with a $15,000.00 interest payment (the "Note Interest") at the Term Expiration.

5.     Collateral.     The repayment of the Compensation is secured by that certain Unconditional Guaranty of Payment executed by IRON CITY, LLC, a Delaware limited liability company ("Iron City") and JASON E. ADKINS, an individual resident of Ohio ("Adkins") (together, the "Guarantors") in which Guarantors are jointly and severally liable with Gann to repay, *inter alia*, the Compensation. Moreover, the parties herein acknowledge and agree that the payment of the Compensation and the obligations created herein are secured by that certain Pledge Agreement (the "Pledge Agreement") from Iron City to Consultant concerning certain Goodyear tires more particularly described therein. The terms and conditions of the Guaranty and Pledge Agreement, together with the terms and conditions contained

1

in any other document executed in connection with this Consulting Agreement, shall be considered a part hereof to the same extent as if written herein. All property described in this paragraph, in which undersigned has granted to Consultant a security interest or security title hereunder is herein collectively referred to as the "Collateral".

6.    Transferability/Assignment of Agreement.  This Agreement may not be transferred/assigned in total or in part by either party unless agreed to by both parties in a signed writing.  This restriction on transferability/assignment of the Agreement shall also prohibit Consultant from assigning, encumbering, or pledging as collateral all or any portion of the Compensation due under this Agreement unless consented to in a signed writing by Gann.

7.    Notices.  All notices required to be given under this Agreement shall be in writing and shall be deemed received on the day such notice (a) is hand delivered to the party, (b) is received by the party from any overnight courier, (c) is received by electronic mail with originals to follow by overnight courier, or (d) is three (3) days after the notice was deposited in United States first-class mail.  The address of each party for where notices shall be sent is as follows:

GANN:                        Scott B. Gann
                             2 Plantation # 308
                             Dorado Beach
                             Dorado, Puerto Rico 00646
                             bear@osocapital.com

CONSULTANT:                  Attn: Addison Thom
                             4840 W. University Avenue, A-1
                             Las Vegas, Nevada 89103
                             shelkcapital@gmail.com

8.    Relationship and Authority.  It is agreed between the parties hereto that Consultant is retained and engaged by Gann only for the purposes and to the extent set forth in this Agreement, and during the period which Consultant renders the Services hereunder, Consultant's relationship to Gann shall be solely that of an independent consultant in the performance of each and every part of this Agreement.

9.    Miscellaneous.  To the extent any paragraph(s), subparagraph(s) or portion(s) of this Agreement found invalid or unenforceable cannot be modified to be made valid or enforceable, then the Agreement shall be construed as if that paragraph(s), subparagraph(s) or portion(s) were deleted, and all remaining terms and provisions shall be enforceable in law or equity in accordance with their terms.  The terms and provisions of this Agreement shall inure to the benefit of and be binding upon Gann, Consultant and their respective successors and assigns.   No provisions of this Agreement may be modified, amended or waived unless such modification, amendment or waiver is agreed to in a writing signed by both parties hereto.  No waiver by either party to this Agreement of any breach of any provision herein by the other party hereto shall be deemed a waiver of any subsequent or simultaneous breach of similar or dissimilar provisions hereof.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Georgia.  This Agreement may be executed in separate counter-parts and when each signature is taken together the Agreement shall be considered a fully and properly executed Agreement enforceable against the parties hereto.  This Agreement constitutes the entire agreement between the Company and Consultant with respect to the subject matter hereof and supersedes any prior agreements or understandings between Gann and Consultant with respect to such subject matter.

**[SIGNATURES ON FOLLOWING PAGE]**

2

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first set forth above.

**GANN:**

_____
SCOTT B. GANN

**CONSULTANT:**

**TIRED OF MINING LLC**,
a Nevada limited liability company

By: _____
Name: Addison Thom
Its: Member-Manager

3

# EXHIBIT C

## UNCONDITIONAL GUARANTY OF PAYMENT

FOR AND IN CONSIDERATION of the sum of Ten and No/100ths Dollars ($10.00) and other good and valuable consideration paid or delivered to the undersigned IRON CITY, LLC, a Delaware limited liability company having an address of 885 Sternberger Road, Jackson, Ohio 45640 ("Iron City") and JASON E. ADKINS, an individual resident of Ohio having an address of 885 Sternberger Road, Jackson, Ohio 45640 ("Adkins") (together with Iron City, the "Guarantors"), the receipt and sufficiency whereof is hereby acknowledged by the Guarantors, and for the purpose of seeking to induce TIRED OF MINING LLC, a Nevada limited liability company ("Lender"), to extend credit to SCOTT B. GANN, an individual resident of Puerto Rico ("Borrower"), which extension of credit will be to the direct interest, benefit and advantage of Guarantors, Guarantors do hereby unconditionally guarantee to Lender and its successors, successors-in-title and assigns:

(a) the full and prompt payment when due, whether by acceleration or otherwise, of (i) that certain Promissory Note (hereinafter referred to as the "Note") executed on or about the date hereof by Borrower payable to the order of Lender in the original stated principal amount of THREE HUNDRED SEVENTY THOUSAND AND NO/100 DOLLARS ($370,000.00), together with any renewals, modifications, consolidations and extensions thereof, (ii) all interest, fees, and charges as may accrue thereon, either before or after maturity thereof, at the rate provided for in the Note, and (iii) all late charges with respect to payments of principal and interest under the Note;

(b) the full and prompt payment of that certain Consulting Agreement (hereinafter referred to as the "Agreement") executed on or about the date hereof by Borrower and payable to the order of Lender in the original stated amount of THREE HUNDRED FIFTY-FIVE THOUSAND AND NO/100 DOLLARS ($355,000.00), together with all renewals, modifications, consolidations and extensions thereof; and

(c) the full and prompt payment of all costs and expenses incurred by Lender relating to any default by Borrower in connection with the Note and/or Agreement.

Guarantors do hereby agree that if the Note and Agreement are not punctually paid by Borrower in accordance with their respective terms, Guarantors shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, or, except as otherwise provided herein, any other notice whatsoever, make such payments. Guarantors further agree to pay to Lender upon demand all expenses (including, without limitation, court costs and attorneys' fees actually incurred) in enforcing this Unconditional Guaranty of Payment (herein referred to as this "Guaranty").

Guarantors hereby further agree as follows:

1.

Guarantors hereby consent and agree that Lender may at any time, and from time to time, without notice to, except as specifically provided herein, or further consent from Guarantors, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm, trustee or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed; substitute for any collateral so held by it or by such person, firm, trustee or corporation, other collateral of like kind, or of any kind; modify the terms of the Note or Agreement; extend or renew the Note or Agreement for any period; grant releases, compromises and indulgences with respect to the Note or Agreement, and to any persons or entities now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, or guarantee the payment of the indebtedness evidenced by the Note or Agreement (it being acknowledged and agreed by Guarantors that Guarantors may be required to pay and perform the obligations guaranteed hereunder in full without assistance or support from any other party, and

Guarantors have not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other parties will be liable to pay or perform the obligations guaranteed hereunder, or that Lender will look to other parties to pay or perform such obligations).  No such action which Lender shall take or fail to take in connection with the Note, Agreement or any security for the payment of the indebtedness of Borrower to Lender or for the performance of any obligations or undertakings of Borrower, and no course of dealing with Borrower or any other person, shall release the Guarantors' obligations hereunder, affect this Guaranty in any way or afford the Guarantors any recourse against Lender.  The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Note or Agreement, and any and all references herein to the Note or Agreement shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof.

2.

Guarantors hereby subordinate any and all indebtedness of Borrower now or hereafter owed to Guarantors to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantors shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantors' obligations hereunder because of any such indebtedness.

3.

Guarantors hereby waive and agree not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligation hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantors, Borrower, or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or the failure of Lender to give notice of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of the Guarantors to proceed against Borrower for reimbursement, or both; (e) any defense based upon failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to the Guarantors any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed except as otherwise required in this Guaranty; (i) protest and notice of dishonor or of default to the Guarantors or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) except as otherwise provided herein, any and all other notices whatsoever to which the Guarantors might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note ; (l) the provisions of Section 10-7-24 of the Official Code of Georgia Annotated; and (m) any other legal or equitable defenses whatsoever to which Guarantors might otherwise be entitled, to the extent permitted by law, unless such defenses are based upon the willful misconduct of Lender.

4.

This is a guaranty of payment and not of collection.  The liability of the Guarantors under this Guaranty shall be joint and several, direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person (any rights under Georgia law or any other applicable law to require Lender to bring an action against Borrower being expressly waived hereby, to the extent waivable), nor against collateral, securities or liens available to Lender, its successors, successors-in-title, endorsees or assigns.  Guarantors waive any right to require that an action be brought against Borrower or any other person, including other guarantors, or to require that resort be had to any security or to any balance

of any deposit account or credit on the books of Lender in favor of Borrower or any other person, and Guarantors specifically waive whatever defenses, if any, it may have under the laws of the State of Georgia. In the event of the occurrence of a default or an event of default under the Note or Agreement, as applicable, Lender shall have the right to enforce its rights, powers and remedies thereunder or hereunder or under any other instrument now or hereinafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or Agreement, and all rights, powers and remedies available to Lender in such event shall be non-exclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity.

5.

This Guaranty shall be an absolute, irrevocable and continuing guaranty.  In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership, or other debtor relief law, or any judgment, order, or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the indebtedness under the Note or the Agreement, any prior release or discharge from the terms of this Guaranty given to Guarantors by Lender shall be without effect, and this Guaranty shall remain in full force and effect.

6.

Guarantors acknowledge that this Guaranty is delivered to Lender in the State of Georgia and is accepted by Lender in the State of Georgia.  Guarantors and Lender hereby acknowledge and agree that this Guaranty and the indebtedness guaranteed hereby and the obligations created hereunder (i) are made and intended as a contract under the laws of the State of Georgia and are to be governed by and interpreted in accordance with the substantive laws of the State of Georgia, and (ii) are to be construed and enforced in accordance with the substantive laws of the State of Georgia.  For purposes of this Guaranty and the resolution of disputes hereunder, Guarantors hereby irrevocably submit and consent to, and waives any objection to, the non-exclusive jurisdiction of the courts of the State of Georgia and of the federal courts located in the State of Georgia.

7.

Guarantors warrant and represent to Lender that (a) this Guaranty is a legal, valid and binding obligation of Guarantors, enforceable against Guarantors in accordance with its terms; (b) the execution, delivery and performance by Guarantors of this Guaranty does not and will not violate any authority having the force of law or any indenture, agreement, or other instrument to which either Guarantor is a party or by which either Guarantor or any of the properties or assets of Guarantors are or may he bound; (c) there is no action or proceeding at law or in equity or by or before any court or governmental instrumentality or agency now pending or to the knowledge of Guarantors threatened or affecting Guarantors which may materially and adversely affect the financial condition of Guarantors; and (d) Guarantors are solvent.

8.

This Guaranty may not be changed orally, and no obligation of the Guarantor can be released or waived by Lender or any officer or agent of Lender except by a writing signed by a duly authorized officer of Lender.  This Guaranty shall be irrevocable by Guarantor until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Note and Agreement have been completely performed.

9.

3

The provisions of this Guaranty shall be binding upon the Guarantors and their heirs, successors, successors-in-title, legal representatives and assigns, and shall inure to the benefit of Lender, its successors, successors-in-title, legal representatives and assigns.

10.

If from any circumstances whatsoever fulfillment of any provision of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced, in the case of a violation of any applicable usury statute, in accordance with the terms of the Note, and in all other cases, reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity.  The provisions of this paragraph shall control every other provision of this Guaranty.

11.

Lender may transfer and assign this instrument or any of its rights hereunder with respect to all the obligations guaranteed hereunder and in the event of such transfer or assignment, the transferee or assignee shall have the same rights and remedies as if originally named herein as Lender.

12.

If any provision of this Guaranty or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, then, at the option of the Lender exercisable in its sole discretion, the remainder of this Guaranty and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

13.

All notices required to be given under this Agreement shall be in writing and shall be deemed received on the day such notice (a) is hand delivered to the party, (b) is received by the party from any overnight courier, (c) is received by electronic mail with originals to follow by overnight courier, or (d) is three (3) days after the notice was deposited in United States first-class mail.  The address of each party for where notices shall be sent is as follows:

|  |  |
|---|---|
| GUARANTORS: | Attn: Jason E. Adkins |
|  | 885 Sternberger Road |
|  | Jackson, Ohio 45640 |
|  | bear@osocapital.com |
|  |  |
| LENDER: | Attn: Addison Thom |
|  | 4840 W. University Avenue, A-1 |
|  | Las Vegas, Nevada 89103 |
|  | shelkcapital@gmail.com |

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the undersigned has executed this Guaranty under seal and delivered this Guaranty as of the ____ day of November 2017.

**IRON CITY, LLC**,
a Delaware limited liability company

By: _____(SEAL)
Name: Jason E. Adkins
Title: Manager- Member

_____

**JASON E. ADKINS**